**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING**

**UNITED STATES OF AMERICA,**

v.     Criminal Action No. 5:25-CR-28
       (BAILEY)

**PAUL J. HARRIS,**

        Defendant.

**UNITED STATES' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS INDICTMENT**

Comes now the United States of America and Randolph J. Bernard, Acting United States Attorney for the Northern District of West Virginia, by Jarod J. Douglas and Jennifer T. Conklin, Assistant United States Attorneys for said District, and responds in opposition to the defendant's Motion to Dismiss Indictment [Doc. 40].

### I.  BACKGROUND

On June 3, 2025, a Federal grand jury in Wheeling, West Virginia, returned a 42-count indictment [Doc. 1], charging the defendant with Mail Fraud, Wire Fraud, Bank Fraud, and Unlawful Monetary Transactions, in violation of 18 U.S.C. §§ 1341, 1343, 1344(2), and 1957.

On June 24, 2025, the Court approved the defendant's request to proceed pro se [Doc. 23].

On June 30, 2025, the Court arraigned the defendant and ordered that the trial be held on August 12, 2025 [Doc. 27].

On July 16, 2025, the defendant filed the instant motion to dismiss the indictment, arguing that it fails to adequately state the offenses that it charges [Doc. 40].

1

On July 21, 2025, the Court granted the government's motion to continue and ordered that the trial be held on November 4, 2025 [Doc. 44].

On July 23, 2025, the government filed a motion to dismiss the bank fraud counts [Doc. 48].

## II. APPLICABLE LAW

Pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v), a defendant must raise by pretrial motion a defense or objection that an indictment is defective for failure to state an offense.

Federal Rule of Criminal Procedure 7(c)(1) requires that an indictment be "a plain, concise, and definite written statement of the essential facts constituting the offense charged."

To adequately allege an offense, an indictment "must contain the elements of the offense charged, fairly inform a defendant of the charge, and enable the defendant to plead double jeopardy as a defense in a future prosecution for the same offense." United States v. Kingrea, 573 F.3d 186, 191 (4th Cir. 2009) (citation omitted). An indictment "may also fail to state an offense if the allegations therein, even if true, would not state an offense." United States v. Brewbaker, 87 F.4th 563, 572 (4th Cir. 2023) (citation and quotation omitted).

Ordinarily, an indictment that tracks the statutory language is sufficient. See Hamling v. United States, 418 U.S. 87, 117 (1974); United States v. Wicks, 187 F.3d 426, 427 (4th Cir. 1999).

## III. ARGUMENT

**A. The government's motion to dismiss, if granted, moots the defendant's challenges to the bank fraud counts.**

The defendant challenges the sufficiency of the pleading of the bank fraud counts. However, if the Court grants the government's motion to dismiss these counts, then the Court should deny the defendant's motion to dismiss these counts as moot.

**B. The remaining counts sufficiently track the language of the mail fraud, wire fraud, unlawful monetary transaction statutes.**

As an initial matter, the mail and wire fraud counts are adequate because they track the relevant statutory language.

The statute for the offense of wire fraud, 18 U.S.C. § 1343, states in relevant part:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

The statute for the offense of mail fraud, 18 U.S.C. § 1341, states in relevant part:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, . . . , for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both.

Tracking the language of these two statutes, the indictment alleges:

Beginning in or about at least April 2014, and continuing to on or about June 3, 2025, in Ohio County, in the Northern District of West Virginia, and elsewhere, the defendant, **PAUL J. HARRIS**, devised and intended to devise a scheme and artifice to defraud and obtain money from clients by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing the scheme and artifice to defraud and obtain money from his clients, did knowingly deliver and cause to be delivered by mail according to the direction thereon, a matter or thing, and did knowingly transmit and cause to be transmitted in interstate and foreign commerce, by means of wire communications, certain signs and signals.

3

([Doc. 1] at p. 4, ¶ 2).

The indictment proceeds to describe the manner and means of the scheme involving mail fraud and wire fraud. (Id. at pp. 4-5, ¶¶ 4-7). The indictment alleges several but not all acts taken by the defendant in furtherance of the scheme. (Id. at pp. 5-13, ¶¶ 8-52). The indictment identifies the wires and mailings, as well as the dates of the wires and mailings, immediately following a paragraph tracking the statutory language for a second time. (Id. at pp. 14-16, ¶¶ 59-60).

Likewise, the unlawful monetary transaction counts are adequate because they track the relevant statutory language.

The statute for the offense of engaging in unlawful monetary transactions, 18 U.S.C. § 1957, states in relevant part:

> Whoever . . . knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, shall be punished as provided in subsection (b).

The statute provides that the term "specified unlawful activity" has the meaning given the term in 18 U.S.C. § 1956. See 18 U.S.C. § 1957(f)(3). As relevant here, § 1956(c)(7) defines "specified unlawful activity" to include "any act or activity constituting an offense listed in" 18 U.S.C. § 1961(1). Among the offenses listed there is bank fraud, in violation of 18 U.S.C. § 1344.

Tracking the statutory language of § 1957, and the statutory definition of "specified unlawful activity," the indictment alleges:

> On or about the dates set forth in the chart below, in Ohio County, in the Northern District of West Virginia, and elsewhere, the defendant, **PAUL J. HARRIS**, did knowingly engage in a monetary transaction through and to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is, the defendant, **PAUL J. HARRIS**, made and caused to be made

the following monetary transactions in or affecting interstate commerce by or through a financial institution with funds having been derived from a specified unlawful activity, specifically bank fraud in violation of Title 18, United States Code, Section 1344(2)[.]

([Doc. 1] at p. 21, ¶ 2).

The indictment proceeds to describe the monetary transactions, including the date of the transaction, the amount of money involved in the transaction, the accounts on both sides of the transaction, and the method of transaction, e.g., by check or by Automated Clearing House disbursement. (Id. at pp. 21-22).

For these reasons alone, the Court should deny the defendant's motion as it pertains to the mail fraud, wire fraud, and unlawful monetary transaction counts.

## C. The mail and wire fraud counts state a claim under well-established Supreme Court case law.

The defendant challenges the mail and wire fraud counts on two primary fronts, namely: (1) he argues that all the counts fail because the indictment contains no facts alleging that he made a material misrepresentation to obtain the money from his clients, and (2) he argues that some counts fail because, as pleaded, the acts were not for the purpose of executing the alleged scheme. As explained below, the Court can reject both arguments as a matter of law.

### 1. An indictment need not plead a fraudulent-inducement theory to state a claim for mail and wire fraud as long as the indictment alleges a scheme to defraud with money as an object of the fraud.

In arguing that the mail and wire fraud counts fail because the indictment contains no facts alleging that he made a material misrepresentation to obtain money from his clients, the defendant relies on the Supreme Court's recent opinion in Kousisis v. United States, 605 U.S. ____, 145

5

S.Ct. 1382 (May 22, 2025). The defendant is correct that Kousisis is instructive, just not in the way he presents.

The government had charged Kousisis and the industrial-painting company he helped manage, Alpha and Construction Co., with "wire fraud, asserting that they had *fraudulently induced* [the Pennsylvania Department of Transportation] to award them painting contracts." Id. at 1388 (emphasis added). The question before the Court was whether the government's "fraudulent-inducement theory" was consistent with the wire fraud statute even though Kousisis and Alpha completed the painting work. Id. Because the Court found that "a defendant violates § 1343 by scheming to 'obtain' the victim's 'money or property,' regardless of whether he seeks to leave the victim economically worse off," it held that "[a] conviction premised on a *fraudulent inducement* thus comports with § 1343." Id. at 1392 (emphasis added).

Contrary to the defendant's reading, however, the Kousisis Court did not hold that a defendant can violate § 1343 *only through fraudulent inducement*, where every discrete fraud count must rigidly encompass a fraudulent representation causing a victim to part with money. In fact, the Kousisis Court recognized that the fraudulent-inducement theory "criminalizes a *particular species of fraud*: intentionally lying to induce a victim into a transaction that will cost her money or property," before noting that the "language of the wire fraud statute is *undeniably broad*." Id. at 1398 (internal quotation omitted) (emphasis added).

Where the Kousisis opinion is instructive is its reaffirmation that "[a] defendant commits federal wire fraud . . . only if he both 'engaged in deception' and had 'money or property' as 'an object' of his fraud. Id. at 1390 (citing Ciminelli v United States, 598 U.S. 306, 312 (2023), quoting Kelly v. United States, 590 U.S. 391, 398 (2020)). In other words, the Court stated,

6

"[o]btaining the victim's money or property must have been the 'aim,' not an 'incidental byproduct,' of the defendant's fraud." Id. at 1391 (quoting Kelly, 590 U.S. at 402, 404).

In fact, the Supreme Court has spoken about the breadth of mail fraud when discussing the 1909 amendment to the mail fraud statute that added the words "or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises" after the original phrase "any scheme or artifice to defraud." McNally v. United States, 483 U.S. 350, 357 (1987). The McNally Court found that adding the phrase "simply made it unmistakable that the statute reached false promises and misrepresentations as to the future *as well as other frauds involving money or property*." Id. at 359 (emphasis added). In other words, the "money-or-property requirement" limits schemes to defraud to "those aimed at causing deprivation of money or property," which can be accomplished in various ways, not just through fraudulent inducement. Id. at 358.

The Supreme Court has at least twice held that individuals who retain or misappropriate the money or property of others, regardless of how they acquired it, fall within the purview of mail or wire fraud.

Twenty years ago, the Supreme Court upheld the wire fraud conviction of a defendant accused of wrongfully retaining money or property in Pasquantino v. United States, 544 U.S. 349 (2005), which involved a scheme to smuggle large quantities of liquor into Canada, thereby avoiding excise taxes imposed on imports. In deciding that this activity was wire fraud, the Court noted that "fraud at common law included a scheme to deprive a victim of his entitlement to money. For instance, a debtor who concealed his assets when settling debts with his creditors thereby committed common-law fraud." Id. at 356.

7

Even more relevant here, the Supreme Court held, nearly 40 years ago, that the mail and wire fraud statutes reach "the act of embezzlement, which is the fraudulent appropriation to one's own use of the money or goods entrusted to one's care by another." United States v. Carpenter, 484 U.S. 19, 27 (1987) (citing Grin v. Shine, 187 U.S. 181, 189 (1902)) (emphasis added); see also United States v. Jones, 472 F.3d 1136, 1140 (9th Cir. 2007) (upholding wire fraud conviction where defendant fraudulently appropriated money received from investors, even though he did not possess fraudulent intent when he received the money); United States v. Sullivan, 522 F.3d 967 (9th Cir. 2008) (upholding mail and wire fraud convictions based on defendants' subsequent fraudulent appropriation).

Not even the defendant argues that the indictment fails to sufficiently allege that he misappropriated money that his clients entrusted in his care. That is probably because the indictment alleges, "PAUL J. HARRIS would commingle client funds with non-client funds by moving client funds from his IOLTA account to his law firm operating account, where he converted the client funds to his own use to fund payments that were unrelated to the representation of the client." ([Doc. 1] at p. 4, ¶ 5). And then, the indictment proceeds to allege several examples of misappropriation, which are too numerous to recite here. As one general example, the indictment alleges that the defendant misappropriated money received from CLIENT-3 to pay taxes, and then misappropriated class action settlement funds, including those of CLIENT-4[1], to subsequently pay some of CLIENT-3's taxes. (See Id. at p. 8, ¶¶ 27-31; p. 12, ¶¶ 48-52).

---

[1] As such, the defendant's challenge to Count 4, based on the mailing of CLIENT-4's settlement check to the defendant, should be rejected because it is properly pled under a misappropriation theory.

8

Because the indictment sufficiently alleges that his clients' money was the object of his mail and wire fraud scheme, including through misappropriation, the Court should reject the defendant's argument that the indictment needed to tie every mail and wire fraud count to a fraudulent inducement.[2]

> **2. Wire and mail fraud charges can be based on actions unrelated to the initial obtaining of the money, such as actions taken to conceal prior misappropriation or to lull or forestall action on the part of those from whom the defendant has obtained money.**

The defendant next argues that some counts fail to state a claim because, in his opinion, the actions alleged cannot be for the purpose of executing the scheme to obtain his clients' money. However, this argument represents another failure to understand, or refusal to accept, the breadth of the mail and wire fraud statutes, as interpreted by the Supreme Court.

> **a. Count 1: Mail Fraud regarding CLIENT-2.**

Count 1 charges that the defendant committed mail fraud when he knowingly delivered and caused to be delivered, in the mail, the case file of CLIENT-2 to an attorney of CLIENT-2 on December 28, 2020. ([Doc. 1] at p. 14, ¶ 59).

The defendant argues that the act of mailing CLIENT-2's file cannot legally form the basis for a mail fraud offense because the money had already been obtained from CLIENT-2.

As an initial matter, to be sufficient at this stage, the indictment is not required to allege how each mailing and wire was for the purpose of executing the scheme. Rather, it is sufficient

---

[2] By no means is the government waiving its right to present evidence that the defendant's conduct included fraudulent inducement. In fact, the government believes that some of the counts are sufficiently alleged as involving fraudulent inducements. The government's position, here, is that a discussion of whether and to what extent the indictment alleges fraudulent inducement is unnecessary because all the mail and wire fraud counts state a claim under a misappropriation theory, which is indisputably sufficiently pled.

that the indictment alleges that all the listed mailings and wires were for the purpose of executing the scheme. United States v. Brewbaker, 87 F.4th 563, 572 (4th Cir. 2023) (indictment allegations to be taken as true on Rule 12(b) motion). In any event, the Supreme Court and the Fourth Circuit have long rejected the defendant's argument.

Over 60 years ago, the Supreme Court held that "a deliberate, planned use of the mails *after the victims' money ha[s] been obtained*" can be for the purpose of executing a mail fraud scheme, especially when the indictment specifically alleges that the scheme "contemplated from the start the commission of fraudulent activities which were to be and actually were carried out both before and after the money was obtained from the victims." United States v. Sampson, 371 U.S. 75, 80 (1962) (emphasis added); see also United States v. Maze, 414 U.S. 403 (1974) (describing the mailings in Sampson as being "designed to lull the victims into a false sense of security, postpone their ultimate complaint to the authorities, and therefore make the apprehension of the defendants less likely than if no mailings had taken place").

Nearly 40 years ago, the Supreme Court reaffirmed that "[m]ailings occurring after receipt of the goods obtained by fraud are within the [mail fraud] statute if they 'were designed to lull the victims into a false sense of security, postpone their ultimate complaint to the authorities, and therefore make the apprehension of the defendants less likely than if no mailings had taken place.'" United States v. Lane, 474 U.S. 438, 451 (1986) (quoting Maze, 414 U.S. at 403 and citing Sampson).

It is no surprise, then, that the Fourth Circuit has held that "[l]ulling letters sent to innocent victims for the purpose of advancing a fraudulent and criminal scheme are sufficient to charge mail fraud, *even where the letters follow the acquisition of the money in question*. United States

10

v. Snowden, 770 F.2d 393, 398 (4th Cir. 1985) (citing Sampson and Maze); see also United States v. Godwin, 272 F.3d 659, 668 (4th Cir. 2001); United States v. Pierce, 409 F.3d 228, 232-33 (4th Cir. 2005) (both citing favorably Snowden, 770 F.2d at 398).

Applying this well-established law on lulling, Count 1 is properly charged as a mail fraud, even though the act was taken years after the defendant's acquisition of the advance payment of fees from CLIENT-2, because the indictment sufficiently contextualizes Count 1 as a lulling by alleging the following:

- The defendant "devised and intended to devise a scheme and artifice to defraud and obtain money from clients by means of materially false and fraudulent pretenses, representations, and promises." (Id. at p. 4, ¶ 2.)

- As part of the scheme, the defendant "would make false and misleading statements to his clients and to others . . . to conceal his misuse of client funds and to *lull and forestall action by his clients and others*." (Id. at p. 5, ¶ 7) (emphasis added).

- In October and November 2017, the defendant deposited $50,000 in his IOLTA account, which he received from CLIENT-2 as an advance payment of fees, as part of the defendant's agreement to represent CLIENT-2 in a federal criminal tax investigation. (Id. at p. 2, ¶ 6; p. 4, ¶ 1).

- By November 2, 2017, the defendant had expended the first $25,000 installment payment of CLIENT-2, which the defendant had deposited on October 20, 2017, "including to fund payments not related to his representation of CLIENT-2." (Id. at p. 6, ¶¶ 14-16).

- On February 22, 2020, the defendant gave CLIENT-2 an "itemized billing statement, which purported to account for the use of the advance payment of fees of $50,000 by falsely and fraudulently claiming over $44,000 in fees." (Id. at p. 6, ¶ 18).

- On December 28, 2020, the defendant "produced to an attorney for CLIENT-2 a purported copy of the file of CLIENT-2, which included 131 pages of proposed jury instructions." (Id. at p. 6, ¶ 19).

Therefore, because the indictment more than sufficiently alleges that the defendant's mailing of CLIENT-2's file was for the purpose of executing his scheme to obtain money from his clients, his challenge to Count 1 should be rejected.

### b. Counts 5-17: Mail Fraud regarding CLIENT-3

Counts 5-17 charge that the defendant committed mail fraud when he knowingly delivered and caused to be delivered, in the mail to the Internal Revenue Service, checks made payable to the U.S. Treasury for the taxes of CLIENT-3 and the daughter of CLIENT-3. ([Doc. 1] at pp. 14-15, ¶ 59).

The defendant argues that none of these mailings can legally form the basis for a mail fraud offense because, as payments to a third party to settle accounts for one of the alleged victims, the mailings cannot have been for the purpose of executing a fraud to obtain money. This argument misses the mark.

As an initial matter, this argument ignores the scope of the alleged mail fraud scheme. It is inappropriate and plainly inaccurate to place these counts into a CLIENT-3 silo as part of desperate attempt to require some harm to CLIENT-3 for these mailings to be in furtherance of the scheme. The indictment clearly alleges that client funds lawfully belonging to *other clients* were

misappropriated to fund these payments and that the defendant's scheme was to "obtain money from clients," plural. ([Doc. 1] at p. 12, ¶¶ 48-52; p. 4, ¶ 2). As such, these counts state a claim for mail fraud under a misappropriation theory.

But misappropriation was not the only alleged purpose for these payments. The indictment alleges that these payments were made for the purpose of concealing the defendant's prior misappropriation of the funds CLIENT-3 intended to be used to pay taxes and for the purpose of lulling and forestalling action by CLIENT-3 for the failure to pay the taxes earlier. (See Id. at p. 4, ¶ 6). After all, it has been established in the Fourth Circuit for over 60 years that lulling payments intended to conceal past fraud and ensnare other victims are for the purpose of executing mail and wire fraud. United States v. Painter, 314 F.2d 939, 943 (9th Cir. 1963).

Though simply alleging that these mailings were in furtherance of the scheme is sufficient at this stage, the indictment goes further by describing multiple ways in which these mailings were for the purpose of executing the scheme.³

---

³ The defendant argues that the counts involving communication with CLIENT-3 or the son of CLIENT-3 (Counts 3, 27-29) are insufficiently pled because there is no explicit and separate allegation of lulling. Such specificity, however, is not required at this stage. The indictment alleges that, as part of the mail and wire fraud scheme, the defendant would "make false and misleading statements to his clients" to "conceal his misuse of client funds and to lull and forestall action by his clients." ([Doc. 1] at p. 5, ¶ 7). And the indictment alleges that the subject mail and wire communications were made for the purpose of executing the scheme. (Id. at p. 14, ¶ 59; p. 15, ¶ 60). That suffices to defeat a Rule 12(b) motion to dismiss. The same goes for Count 20 based on an email to an insurance company regarding the first-party claim of CLIENT-3. It is sufficient that the indictment alleges that this email was for the purpose of executing the wire fraud scheme. (Id. at p. 15, ¶ 60). In this regard, the government notes that a mailing or wire is not required to be itself false or fraudulent. Rather, it must only be incident to an essential part of the scheme, such as obtaining additional client funds to misappropriate. Schmuck v. United States, 489 U.S. 705, 712, 715 (1989).

**C. The unlawful monetary transaction counts state a claim under applicable Fourth Circuit case law.**

The defendant argues that, if the bank fraud counts are dismissed, then the unlawful monetary transaction counts, charged under 18 U.S.C. § 1957, must also be dismissed. This argument, however, is factually and legally incorrect.

From the outset, it is important to note what the indictment alleges and what it does not allege regarding the § 1957 charges. The indictment alleges that each § 1957 monetary transaction involved more than $10,000 "derived from a specified unlawful activity, specifically bank fraud in violation of Title 18, United States Code, Section 1344(2)[.]" ([Doc. 1] at pp. 21, ¶ 2). The indictment does *not* allege that the § 1957 transactions charged were based on the specific bank fraud counts contained in the indictment, which the government has moved to dismiss.

Nor do the § 1957 counts become legally unviable if the bank fraud counts are dismissed because "[i]t is clear that a defendant may be convicted of money laundering even if she is not a party to, much less convicted of, the specified unlawful activity." United States v. Cherry, 330 F.3d 658, 667 (4th Cir. 2003); see also United States v. Smith, 46 F.3d 1223, 1234 (1st Cir. 1995) ("There is no requirement that the defendant must have committed the crime . . . from which the property was derived." (internal quotation marks omitted)); United States v. Richard, 234 F.3d 763, 768-69 (1st Cir. 2000) (upholding money laundering convictions even though defendant had been acquitted of specified unlawful activity); United States v. Mankarious, 151 F.3d 694, 703 (7th Cir. 1998) (upholding convictions for money laundering even though court dismissed counts alleging specified unlawful activity); United States v. Kennedy, 64 F.3d 1465, 1479-80 (10th Cir. 1995) (affirming money laundering convictions despite acquittal of specified unlawful activity).

14

Moreover, regarding the sufficiency of pleading a § 1957, the Fourth Circuit has held that because the requirement in § 1957 that "the funds be illegally derived is not the distinguishing aspect and therefore does not lie at the core of the offense, details about the nature of the unlawful activity underlying the character of the proceeds need not be alleged." United States v. Smith, 44 F.3d 1259, 1265 (4th Cir. 1995). In Smith, the challenged § 1957 count referred to its predicate only by alleging that the subject funds "were the proceeds of a wire fraud, in violation of 18 U.S.C. § 1343." Id. at 1264 n. 2. In this regard, the court noted that the count "alleged not only that proceeds were derived from specified unlawful activity, but that the activity violated 18 U.S.C. § 1343, which penalizes wire fraud," and held, "Nothing more need be alleged." Id. at 1265; see also Cherry, 330 F.3d at 668 (applying Smith § 1957 charges sufficiently pled because they alleged that the funds were "derived from a specified unlawful activity, and that such activity violated 18 U.S.C. § 656[,]" which penalizes bank embezzlement).

Here, the § 1957 counts allege not only that the proceeds were derived from specified unlawful activity, but that the activity violated 18 U.S.C. § 1344(2), which penalizes bank fraud. As in Smith, nothing more need be alleged.

### IV.   CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny the defendant's Motion to Dismiss Indictment.

Respectfully submitted,

RANDOLPH J. BERNARD
ACTING UNITED STATES ATTORNEY

By: /s/ Jarod J. Douglas
Jarod J. Douglas
Assistant U. S. Attorney

15

and

/s/ Jennifer T. Conklin
Jennifer T. Conklin
Assistant U. S. Attorney

## CERTIFICATE OF SERVICE

    I, Jarod J. Douglas, Assistant United States Attorney for the Northern District of West Virginia, hereby certify that on the 23rd day of July 2025, the foregoing UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS INDICTMENT was electronically filed with the Clerk of the Court using the CM/ECF system and was served on the defendant via facsimile on the same date.

                                            RANDOLPH J. BERNARD
                                            ACTING UNITED STATES ATTORNEY

                    By:    /s/Jarod J. Douglas
                            Jarod J. Douglas
                            Assistant U. S. Attorney